**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR:RAB
F. #2026R00617

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 27, 2026

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Ali Alaheri
Criminal Docket No. 21-296 (RPK)

Dear Judge Kovner:

The government respectfully submits this letter in anticipation of the defendant's sentencing, scheduled for October 29, 2026. On October 15, 2026, the defendant pled guilty to Charge One of the Violation of Supervised Release ("VOSR") Report for forcibly touching a female victim (the "Victim") on June 10, 2026, less than 48 hours after his release from custody. The government respectfully requests that the Court impose a term in custody of two years, which is the top of the statutory range and above the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 5 to 11 months' imprisonment.[1]

I. Facts of the Offense

The defendant was released from custody on June 8, 2026, following a 63-month term of federal incarceration for setting fire to a Yeshiva in 2021, and a brief custodial term in state custody in connection with a violent assault.

[1] The government previously indicated that it intended to seek a Guidelines sentence, the top of which is 11 months. However, upon further consideration of the defendant's record, after obtaining additional information (including video footage) relating to the defendant's violent conduct while in custody, and upon learning that the defendant has been rejected from a housing program that might have helped mitigate the danger he poses on release, the government respectfully submits that a sentence greater than 11 months is warranted here.

Within 48 hours of his release from custody, on June 10, 2026, the defendant crept up behind a woman on the street and grabbed her buttocks. (See GX 1S).[2] The attack, like many others committed by the defendant, was entirely unprovoked and occurred without any prior interaction between the defendant and the Victim.

II. Appropriate Sentence

In determining the sentence to be imposed, the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to promote both specific and general deterrence. See 18 U.S.C. § 3553(a). For the reasons set forth below, the government respectfully requests that the Court impose a sentence of two years in custody.

First, the nature and circumstances of the offense are serious. The defendant engaged in a sexual attack of the Victim on a public street without provocation. The attack was calculated and the defendant can be seen in video footage observing the Victim walk across the street and then, after she passed him, slowly walking behind her prior to the attack. (See GX 1S; see also GX 2S at 1:40-2:36 (the defendant standing by the bus stop observing the Victim cross the street prior to the attack)). Following the attack, the defendant went to a housing shelter where he engaged in inappropriate sexual behavior in a public space, alarming other individuals at the shelter. (See, e.g., GX 6 at 01:00-02:40; GX 8S at 00:20 (a woman reporting to a law enforcement officer that, "this guy is sitting here grabbing his penis"); GX 8S at 00:50 (law enforcement officer noting that, "he has an erection right now")).

The June 10 assault left the Victim deeply traumatized. She described being "terrified" in the moment and unable to catch her breath. (Oct. 15, 2026 Plea Tr. at 17). She described the "sadness" she feels and the "blame [she] feel[s] for [herself]" as a result of the defendant's attack, stating, "I'm constantly reassessing what I could have done to protect myself, how I failed to assess my surroundings." (Id. at 17). Because her work involves dealing with victims of violence, including sexual violence, the Victim has been unable to return to work since the defendant's attack, because the content of her work is triggering. (Id. at 17-19). As a result, the Victim used all of her sick time and annual leave and is considering retiring earlier than she anticipated because she feels unable to confront the subject matter of her work after what the defendant did to her. (Id. at 19-20).

The type of unprovoked violence the defendant displayed on June 10 is a pattern of behavior the defendant has exhibited over the course of his life. The defendant has an extensive history of arrests and convictions that includes convictions for weapons possession, (PSR ¶¶ 28, 29), as well as charges and arrests for multiple assaults and for

---

[2] "GX" refers to the government exhibits previously provided to the Court in anticipation of the VOSR evidentiary hearing.

attempted murder, (PSR ¶¶ 33-35, 37). In addition, the defendant has committed multiple assaults over the past four months while in custody at the Metropolitan Detention Center in Brooklyn (the "MDC"). He has been involved in four altercations with four separate inmates. (See Exs. A, B, C, and D, attached hereto).[3] Specifically, on July 18, the defendant was in an altercation with an inmate that appears to have been unprovoked. (See Ex. A at 3 (victim report: "I don't even know that kid. He just attacked me out of nowhere.")). After reviewing video footage, BOP staff determined that the defendant attacked the other inmate as a means to leave the housing unit. (Id. at 4). Mere hours later, the defendant kicked another inmate in the torso. (Ex. B at 2). This incident also appeared to be unprovoked. (Id. at 3 (victim report: " I do not even know the guy, I never spoke to him. As soon as they put him in my cell he kicked me right in front of staff. I have no issues with him, I think he just did not want to have a bunkie."). On August 31, the defendant assaulted yet another inmate by striking the inmate in the head and torso area with a closed fist. (Ex. C at 2). Yet again, this assault appears to be unprovoked. (Id. at 3 (victim report: "I don't know why that dude hit me. For real though it was just random. I didn't say two words to him.")). A video of the August 31 assault is attached hereto as Exhibit E.[4] Finally, on September 10, while being processed to come to court, the defendant struck another inmate in the face with a closed fist. (Ex. D at 2). Again, this assault was unprovoked. (See id. at 3 (victim report: "I don't even know what happened. I was just sitting there waiting to go to court and out of no where, someone just punched me and I was dazed. I didn't even see who did it to me because there was a few people in the holding cell with me.")).

While the government recognizes the defendant's mental health challenges, it is notable that the four assaults committed by the defendant while in custody at the MDC took place after he was consistently taking medication, which, based on BOP records, he began taking July 2, 2026.

Based on the defendant's history of unprovoked violence, the fact that he attacked the Victim immediately upon release, and his continued violent conduct while in custody at the MDC, the government respectfully requests that the Court impose a sentence of two years in custody.

---

[3] The government respectfully request that these investigative reports, which relate to BOP investigations, be filed under seal.

[4] Because this video includes images of other inmates, including the victim of this assault, the government respectfully requests that Exhibit E be filed under seal.

## III. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of two years' imprisonment is appropriate in this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ ______________________
Rachel A. Bennek
Assistant U.S. Attorney
(718) 254-6140

cc: Clerk of the Court (RPK) (by ECF)
Kathryn Wozencroft, Esq. (by ECF)
Ryan Lehr, Probation Department (by email)